# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| JOSEPH AMMONS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  4:19-cv-00495-SGC |
| | ) | |
| ANDREW SAUL, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Joseph Ammons appeals from the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying him Supplemental Security Income ("SSI") and  Disability Insurance Benefits ("DIB"). (Doc. 1).[1]  The parties have consented to the exercise of full dispositive jurisdiction by a Magistrate Judge.  *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(a).  (Doc. 10). Ammons timely pursued and exhausted his administrative remedies, and the Commissioner's decision is ripe for review.  For the reasons discussed below, the court finds that the Commissioner's decision is due to be affirmed.

---

[1] References to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files (CM/ECF) system.  References to "R. __" are to the administrative record found at Docs. 8-1 through 8-9 in the court's record.

**I. Procedural History**

Ammons was fifty-two years old at his alleged onset date and fifty-four years old at the time of the decision. (R. 32, 41, 182). He has an eleventh-grade education and past work experience as a welder and barbeque cook. (R. 42, 44, 55-56, 186, 195). He alleges that he is unable to work because of chest pain, irregular heartbeat, back pain, and chronic obstructive pulmonary disease ("COPD"). (R. 194). Ammons testified he could not work primarily due to back pain and heart problems and had experienced difficulty breathing and chest pain. (R. 46, 48-50).

Ammons filed his applications for SSI and DIB on February 23, 2017, alleging disability beginning November 1, 2016. (R. 24, 182). When the Social Security Administration ("SSA") denied his claims initially Ammons requested a hearing before an Administrative Law Judge ("ALJ"). (R. 81-92). A video hearing was held on August 15, 2018. (R. 37-59). Following the hearing, the ALJ denied his claim. (R. 21-32). Ammons appealed the decision to the Appeals Council ("AC"). (R. 148-50). After reviewing the record, the AC declined to further review the ALJ's decision. (R. 1-8). That decision became the final decision of the Commissioner and is now ripe for review. *See Frye v. Massanari*, 209 F. Supp. 2d 1246, 1251 (N.D. Ala. 2001) (citing *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998)).

## II. Statutory and Regulatory Framework

To establish his eligibility for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a). The Social Security Administration employs a five-step sequential analysis to determine an individual's eligibility for disability benefits. 20 C.F.R. § 416.920(b).

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Id.* "Under the first step, the claimant has the burden to show that []he is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[2] If the claimant is engaged in substantial gainful activity, the Commissioner will determine the claimant is not disabled. At the first step, the ALJ determined Ammons has not engaged in substantial gainful activity[3] since November 1, 2016, his alleged onset date. (R. 26).

---

[2] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

[3] Ammons did have some income in 2017, but it did not rise to the level of "substantial gainful activity." (R. 26).

If a claimant is not engaged in substantial gainful activity, the Commissioner must next determine whether the claimant suffers from a severe physical or mental impairment or combination of impairments that has lasted or is expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.920 (a)(4)(ii) & (c). An impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  *See id.* at § 416.921.  Furthermore, it "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms."  *Id.*; *see also* 42 U.S.C. § 423(d)(3).   An impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ."  20 C.F.R. § 416.922(c).[4] "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* 20

---

[4] Basic work activities include:

> (1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 416.922(b).

C.F.R. § 404.1521(a). A claimant may be found disabled based on a combination of impairments, even though none of his individual impairments alone is disabling. 20 C.F.R. § 416.920 The claimant bears the burden of providing medical evidence demonstrating an impairment and its severity. *Id.* at § 416.912(a). If the claimant does not have a severe impairment or combination of impairments, the Commissioner will determine the claimant is not disabled. *Id.* at § 416.920(a)(4)(ii) and (c). At the second step, the ALJ determined Ammons has the following severe impairments: cardiomyopathy, paroxysmal atrial fibrillation, coronary arteriosclerosis, and hypertension.[5] (R. 27).

If the claimant has a severe impairment or combination of impairments, the Commissioner must then determine whether the impairment meets or equals one of the "Listings" found in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii) & (d). The claimant bears the burden of proving his impairment meets or equals one of the Listings. *Reynolds-Buckley*, 457 F. App'x at 863. If the claimant's impairment meets or equals one of the Listings, the Commissioner will determine the claimant is disabled. 20 C.F.R § 416.920(a)(4)(iii) and (d). At the third step, the ALJ determined Ammons did not have an impairment or combination

---

[5] The ALJ found Plaintiff's COPD and back pain were non-severe impairments. (R. 27). Plaintiff does not challenge these findings.

of impairments that meet or medically equal the severity of one of the Listings.  (R. 27).

If the claimant's impairment does not meet or equal one of the Listings, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to the fourth step. 20 C.F.R. § 416.920(e). A claimant's RFC is the most he can do despite his impairment.  *See id.* at § 416.945(a). At the fourth step, the Commissioner will compare the assessment of the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* at § 416.945(a)(4)(iv).  "Past relevant work is work that [the claimant] [has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 416.960(b)(1).  The claimant bears the burden of proving that his impairment prevents him from performing his past relevant work.  *Reynolds-Buckley*, 457 F. App'x at 863.  If the claimant is capable of performing his past relevant work, the Commissioner will determine the claimant is not disabled. 20 C.F.R. §§ 416.920(a)(4)(iv) & (f).

Before proceeding to the fourth step, the ALJ determined Ammons has the RFC to perform a limited range of medium work.  (R. at 28, 30).  More specifically, the ALJ found Ammons had the following limitations with regard to medium work, as defined in 20 C.F.R. § 416.967(c):

> [Ammons] can lift 50 pounds occasionally and 25 pounds frequently; sit for six hours, stand for six hours, walk for six hours; and push and

pull as much as lift and carry.  He can climb ramps and stairs frequently; can climb ladders, ropes or scaffolding occasionally; balance, stoop, kneel, and crouch frequently; and crawl occasionally.  He can work at unprotected heights occasionally; in dust, odors, fumes or pulmonary irritants occasionally; and in extreme cold or extreme heat occasionally.

(*Id.*).  At the fourth step, the ALJ determined Ammons was unable to perform his past relevant work.  (R. 30-31).  With the aid of testimony from the vocational expert ("VE"), however, the ALJ found Ammons could perform the duties of a hand packager, kitchen helper, and assembler.  (R. 30-32).  Therefore, the ALJ concluded Ammons had not been under a disability as defined by the SSA from November 1, 2016, through the date of decision.  (R. 32).

## III. Standard of Review

Review of the Commissioner's decision is limited to a determination whether that decision is supported by substantial evidence and whether the Commissioner applied correct legal standards.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  A district court must review the Commissioner's findings of fact with deference and may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner.  *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Rather, a district court must "scrutinize the record as a whole to determine whether the decision reached is reasonable and supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (internal

citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.* A district court must uphold factual findings supported by substantial evidence, even if the preponderance of the evidence is against those findings.  *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

A district court reviews the Commissioner's legal conclusions *de novo*.  *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993).  "The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

## IV. Discussion

Ammons makes two arguments in favor of remand.  He first argues the ALJ improperly applied the pain standard.  (Doc. 11 at 12-17).  He also argues that the VE's testimony is not substantial evidence because it was not based on a "correct or full statement of [Ammon's] limitations and impairments.  (*Id*. at 17-18).  The court addresses each argument below.

### A.  Application of the Pain Standard

Ammon's first argument concerns the adequacy of the ALJ's evaluation of his pain complaints.  (Doc. 11 at 12-17).  Ammons contends he "had objective causes

of pain and weakness including cardiomyopathy, paroxysmal atrial fibrillation, coronary arteriosclerosis, and hypertension." (*Id*. at 13).[6]   In support of this statement, Ammons points to one medical record from a visit to  Dr. Wael Al-Halaseh on January 24, 2018, where Dr. Al-Halaseh noted "severe Cardiomyopathy EF 10-15% ." (*Id*.).

In addressing a claimant's subjective description of pain and symptoms, the law is clear:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain. *See Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. *See Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* 20 C.F.R. § 404.1529. If a claimant satisfies the first part of the test, the ALJ must evaluate their intensity, persistence, and effect on the claimant's ability to work. *See* 42 U.S.C. §

---

[6] In a footnote, the Commissioner contends that because Ammons "provided no discussion or discussion of the ALJ's decision and does not point to any specific error he alleged the ALJ committed in assessing his allegations," the court should deem this argument waived or abandoned. (Doc. 12 at 12 n.3). The court agrees with the Commissioner that the argument is bare-boned and provides little to no analysis. In fact, the two sentences referenced by the court, as well as a block quote of the medical record, are the only sentences in the almost nine pages addressing the pain standard that could arguably be taken as applying the pain standard to the facts at hand. Nevertheless, the court will address the merits of the claim because there is some semblance of an argument.

423(d)(5)(A); 20 C.F.R. §§ 404.1529(c) & (d), 416.929(c) & (d).  While evaluating the evidence, the ALJ must consider whether inconsistencies exist within the evidence or between the claimant's statements and the evidence, including his history, medical signs and laboratory findings, and statements by medical sources or other sources about how his symptoms affect him.  20 C.F.R. §§ 404.1529(c)(4) & 416.929(c)(4).  In determining whether substantial evidence supports an ALJ's credibility determination, "[t]he question is not . . . whether the ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec*., 421 F. App'x 935, 939 (11th Cir. 2011).  The ALJ is not required explicitly to conduct a symptom analysis, but the reasons for his or her findings must be clear enough that they are obvious to a reviewing court.  *See Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995).  "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Id.* (citation omitted).

The ALJ found that Ammons's medically determinable impairments could reasonably be expected to produce the alleged symptoms but his statements regarding the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 29).  The ALJ partially credited Ammons's subjective complaints when she limited Plaintiff to a reduced range of medium work but concluded his remaining subjective

allegations were not entirely reliable because they were inconsistent with Plaintiff's medical evidence and other evidence in the record. (R. 28-30). As discussed below, the court finds that the ALJ's determination is supported by substantial evidence.

At the hearing, Ammons testified he was unable to work due to heart problems. (R. 46). He stated he experienced a rapid heartrate and chest pain at times and had to constantly check his blood pressure because it ran high and low. (R. 48-49). Ammons lives with a friend and is independent in caring for his personal needs but needs help putting on his socks. (R. 41, 52-53). His daily activities include going to the grocery store, running errands, light housework, watching television, and taking care of his roommate's dogs; he can drive himself. (R. 51, 53-54). As far as limitations, Ammons estimated he could not walk for more than 10 minutes without becoming short of breath; he has to rest after climbing stairs; and he could stand for 20 minutes, sit for 15 minutes, and lift and carry 15 to 20 pounds. (R. 50-51).

The ALJ found, however, these extreme limitations are not supported by the medical evidence. Specifically, the ALJ stated:

> The medical evidence does not provide objective support for his allegations of disabling shortness of breath, rapid heart rate, or chest pain associated with his heart problems. The claimant has been receiving cardiovascular treatment but lacked insurance for the follow-up imaging and laboratory testing that were needed. He did undergo and echocardiogram in October 2017 as part of his disability application, which revealed significant improvement of his ejective fracture since the March 2017 hospitalization. The claimant appears to

have had tachycardia-induced atrial fibrillation, which was successfully reversed by the cardioversion procedure that Dr. Al-Halaseh performed during that hospitalization.  Since the claimant started receiving regular cardiovascular treatment, there is no indication that he has reported any shortness of breath, chest pain or palpitations to any treating source, despite his allegations at the hearing, and aside from some elevated blood pressure at times, the cardiovascular findings have remained normal.

(R. 29-30) (internal citations omitted).

Substantial evidence supports these findings by the ALJ. In March 2017, Ammons was admitted to the hospital with complaints of shortness of breath associated with hypertension and atrial flutter and fibrillation, and an echocardiogram indicated Plaintiff had left ventricular ejection fraction of only 10-15 percent.  (R. 309).  Dr. Al-Halaseh performed a successful electrical cardioversion and afterwards Ammons's cardiovascular and respiratory findings stabilized; his respiratory examination was normal, and his cardiovascular examination revealed regular rate and rhythm with no murmurs or gallops.  (R. 309-10, 313-14).

During the August 2017 consultative examination with Dr. Cetlin Robertson, Ammons had regular rate and rhythm, normal heart sounds, and no murmurs. (R. 340). Then, in his follow-up visit with Dr. Al-Halaseh the following month, Ammons denied chest pain, palpitations, shortness of breath, and fatigue. (R. 344). The records show normal exercise tolerance, no weakness, and no lightheadness, and he denied all physical and mental limitations.  (R. 344).

In October 2017, Ammons had another echocardiogram that showed his ejection fraction improved to 65-70 percent with only mild left ventricular hypertrophy. (R. 347).  The remainder of the medical records show Ammons denied chest pain, palpations, shortness of breath, and fatigue, and his cardiovascular findings remained normal. (R. 350, 360-61, 364-65).

As for the medical record highlighted by Ammons in his brief, the court is unpersuaded.  The record clearly notes that no physical examination was performed on Ammons that day, and there is no record that an echocardiogram was performed. (R. 361).  While there is no clear explanation in the short-handed medical record, the notation regarding the 10-15 percent ejection fracture appears to be referring to the echocardiogram performed in March 2017, before the successful electrical cardioversion procedure.   (R. 361).   As discussed above, the October 2017 echocardiogram showed  significant improvement indicating the cardioversion procedure was successful, and later medical records are unremarkable with regard to Ammons's heart condition and contain no further complaints from Ammons in this regard.  (R. 347, 350, 360-61, 364-65).

In sum, the ALJ correctly considered "the consistency of [Ammons's] statements" with the remainder of the evidence.  *See* SSR 16-3p, 2017 WL 5180304, at *8.  Her determination is supported by substantial evidence.  This claim, therefore, is without merit.

**B.  VE Testimony**

Ammons's final argument is that the VE's testimony is not supported by substantial evidence because it was based on an inaccurate and incomplete hypothetical.   (Doc. 11 at 17-18).   Specifically, Ammons contends that "the hypothetical question relied upon did not accurately state [Ammons]'s pain level or his residual functional capacity" but instead assumed Ammons could work.  (*Id*. at 17).  The court disagrees.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). "The hypothetical need only include the claimant's impairments, not each and every symptom of the claimant."  *Ingram v. Comm'r of Soc. Sec. Admin*., 496 F.3d 1253, 1270 (11th Cir. 2007).  Further, the ALJ is "not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported." *Crawford v. Comm'r of Soc. Sec*., 363 F.3d 1155, 1161 (11th Cir. 2004).

Here, the ALJ found that the evidence demonstrated Ammons could not perform his past relevant work but there are jobs that exist in significant numbers in the national economy Ammons can perform, such as a hand packager, kitchen helper, and assembler. (R. 31-32).  The ALJ's hypothetical questions to the VE fully accounted for Ammons's impairments and limitations, as demonstrated by the

14

medical evidence of record; that is all that is required of the ALJ.  *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999*); McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987); *see also Borges v. Comm'r of Soc. Sec*., 771 F. App'x 878, (11th Cir. 2019) ("because Borges's RFC, which is supported by substantial evidence . . . matched the ALJ's first hypothetical question at the hearing he did not need to rely on these more restrictive hypotheticals").  Significantly, Ammons does not specify what information was inaccurately stated by the ALJ or left out by the hypotheticals posed to the VE, and the court can find none.  (Doc. 11 at 17-18).  The court, therefore, concludes that the hypotheticals were not incomplete or inaccurate, and this claim is without merit.

## V. Conclusion

Having reviewed the administrative record and considered all of the arguments presented by the parties, the undersigned find the Commissioner's decision is supported by substantial evidence and in accordance with applicable law. Therefore, the court finds that the ALJ's decision is due to be **AFFIRMED**.  A separate order will be entered.

**DONE** this 28th day of July, 2020.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE